IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SUSAN BURKETT,
      Plaintiff,

v.                                                  No:  1:05cv64/MMP/MD

JO ANNE B. BARNHART,
Commissioner of Social Security,
      Defendant.
_____

REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Susan Burkett's application for disability insurance benefits under Title II of the Act.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

PROCEDURAL HISTORY

      Plaintiff filed an application for disability benefits claiming an onset date of October 1, 2000.  The application was denied initially and upon reconsideration and the plaintiff requested a hearing before an Administrative Law Judge (ALJ).  At the

hearing she amended her onset date to April 1, 2001. She was represented by counsel and testified. A vocational expert also testified. On July 24, 2003 the ALJ rendered an unfavorable decision (Tr. 14-22) and the Appeals Council declined review (Tr. 3-5), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe conditions of degenerative joint disease of the knee and chronic lumbar strain, but that she did not have a condition or combination of conditions that met or equaled the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that plaintiff was 46 years old with a fifth grade education but without any transferrable job skills; that she was capable of light work with a provision to allow her to change between sitting and being on her feet every hour; that there are a significant number of jobs in the local and national economy that she could perform with these restrictions; and that she was not disabled as defined under the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

**The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.** *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). **If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.** *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

**On April 3, 2000, plaintiff underwent arthroscopic surgery of her right knee, to include debridement at the patella and lateral tibial plateau (Tr. 120). Her knee problem did not resolve immediately and in July 2000 she sought a second opinion from Michael Rozboril, M.D. (Tr. 144-145). Dr. Rozboril found that plaintiff's right knee was swollen and tender with ballotment of the patella. It was warm to the touch and lacked full extension. There was a small fluid wave in the left knee as well. Dr. Rozboril treated plaintiff over the next two years and her condition essentially was unchanged. He frequently aspirated the knee and changed plaintiff's medications but she continued to have significant pain in her knee. On September 11, 2002, Dr. Rozboril opined that in an eight hour workday plaintiff could sit for three to four hours at one time and could work an entire day sitting if she were given appropriate 15 minute breaks and a 30 minute lunch break, that she could stand for up to 30 minutes at a time and stand for a total of one to two hours with appropriate breaks, that she could sit and stand at will for seven to eight hours per day and that she could lift up to five pounds frequently and five pounds occasionally (Tr. 201-204). Dr. Rozboril further opined that plaintiff consistently complained of pain which was continuous and that she was being medicated with opioids which would have**

mild side effects. He also noted that plaintiff suffered from depression or anxiety but was not being treated for that condition. Finally, he noted that plaintiff reported that her pain was marked (six or seven on a scale of one to ten) and that in his opinion he would rate plaintiff's pain at the same level (Tr. 196-200).

The surgeon who operated on plaintiff's knee, Dr. Meister, filled out a form on April 19, 2001, in which he indicated that plaintiff could walk normally, could squat, and could walk on her toes and heels (Tr. 123). Plaintiff was also treated by James Atchison, D.O., the Medical Director of the SpineCare Center at the Shands Clinic of the University of Florida. Although Dr. Atchison was primarily concerned with plaintiff's low back pain, in a note dated June 9, 2000 Dr. Atchison indicated that plaintiff could do work at the light duty level (Tr. 115).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to find her disabled under the Commissioner's standard for mental retardation, in failing to accept the opinion of the treating physician and plaintiff's subjective complaints of pain, and in not adopting an opinion of a vocational expert, and that plaintiff was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.   **Mental Retardation under Listing 12.05c.**

Plaintiff first argues that the ALJ erred in not finding that she was presumptively disabled under 20 C.F.R. Pt. 404, subpt. P., App. 1, § 12.05C. The regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out

specific physical and mental conditions that are presumptively disabling (listings). If a claimant meets the requirements of one of the listings, no further proof of disability is required. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff claims that she has met the requirements of listing 12.05C:

> 12.05  *Mental Retardation*:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>     The required level of severity for this disorder is met when the requirements in A. B. C. or D. are satisfied.
>
> * * *
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff's school records show that she started first grade in school year 1962-63. Her grades that year were straight "D"s and her teacher noted that she was "slow." (Tr. 182-183). In second grade (1963-64) she did only slightly better. Her teacher noted that she was emotionally immature and had shown little progress in her learning skills (*id.*). The teacher also noted that plaintiff had been tested by a psychologist, but the records do not show the result of any such testing.

In the third grade (1964-65) plaintiff's grades were worse (four "F"s and two "D"s in core courses), and her teacher noted that plaintiff was not interested in her work, and recommended her for special education (*id.*). Plaintiff was placed in special education classes in school years 1965-66 and 1966-67, which ordinarily would have been her fourth and fifth grade years (*id.*). The record is unclear on whether she attended school during the 1966-67 year because one record shows

that she was in special education but was "ungraded" (Tr. 182), while another shows that she "dropped." (Tr. 186). She apparently was in school during at least part of that school year because on December 16, 1966 her I.Q. score was recorded as 64 on a "Full Scale WISC" evaluation. During school year 1968-69 (which normally would have been her seventh grade year) she was in the fifth grade and did better (one "B" and six "C"s in core courses) (Tr. 182, 186). It is unclear whether this was a special education class. During school year 1969-70, in what normally would have been her eighth grade year, she attended one semester of seventh grade special education (Tr. 182). There is no mention of her ever being in the sixth grade. She had no formal schooling after the first semester of the seventh grade.

Among the school records is an undated referral application in which someone (presumably a teacher) wrote "I am considering promoting Darlene (the plaintiff) into regular 5th grade class and must evaluate." The stated reason was "change in the past year and a half." (Tr. 185). It is unclear whether such an evaluation was made, but, as noted above, the plaintiff did attend fifth grade in what would normally have been her seventh grade year, and was still in special education in seventh grade.

The ALJ here refused to find that plaintiff was disabled based on her 64 IQ score, and gave the following reasons: (1) "there is no evidence of formal testing or other evidence to support such a conclusion[;]" (2) "claimant was out of school most of the time and was emotionally immature[;]" (3) "when the claimant was 11 years of age, there was a change in the past year and a half and she was being considered for regular fifth grade class which infers that this teacher did not consider her mentally retarded[;]" (4) plaintiff had been able successfully to perform unskilled work; (5) plaintiff could drive to her doctor's appointments; and (6) plaintiff went to the grocery store by herself, and could make change (Tr. 18). Based on

these factors, the ALJ found that there was "no indication that the IQ of 64 noted on one school record [was] a valid representation of her true intelligence." (*Id*).

The ALJ's determination is unsupported. First, there is evidence of formal testing in the plaintiff's school record. She scored a 64 on the full scale WISC. That test, the Wechsler Intelligence Scale for Children, is widely recognized as a valid IQ assessment test. *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (2000), p. 41. (DSM-IV-TR). The Wechsler series is favored by the Commissioner for IQ testing. 20 C.F.R. Pt. 404, subpt. P., App. 1, § 112.00 (9). The school district could perhaps have done a better job of documenting who administered the test, and something from a mental health professional endorsing the score would add some weight, but to say that there is no record of formal testing is incorrect. Second, whether plaintiff was in school or out of school, and whether she was emotionally immature, has no bearing and supports no finding concerning her IQ. Third, it is speculative at best to say that a person is not mentally retarded because one teacher thought the person might not be. Moreover, regardless of what may have happened as the result of this teacher's opinion, which is unclear, it is clear that plaintiff was still in special education in the seventh grade, which she did not complete.

Finally, the remaining factors noted by the ALJ are entirely consistent with an IQ of 64. The DSM-IV-TR describes a person in the "IQ level 50-55 through approximately 70" as follows:

> **Mild Mental Retardation is roughly equivalent to what used to be referred to as the educational category of "educable." This group constitutes the largest segment (about 85%) of those with the disorder. As a group, people with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5 years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they**

> usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress. With appropriate supports, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings.

DSM-IV-TR, p. 43. None of the reasons cited by the ALJ (working, driving to the doctor, buying groceries and making change) are in conflict with this description of a mildly mentally retarded person, and this adds support to a finding that the IQ score of 64 was valid.

Plaintiff spent her working life as a housekeeper, cleaning bathrooms in office buildings and a hospital (Tr. 212-213). Work of this nature is not contraindicated by the DSM-IV-TR, nor does it require great mental acumen,[1] and the fact that the plaintiff worked, which the ALJ emphasized, is by itself barely relevant. In *Ambers v. Heckler*, 736 F.2d 1467 (11th Cir. 1984), the court considered a comparable situation, and held that a claimant met listing 12.05C with an appropriate IQ score and a physical impairment, even though she had worked as a domestic, a babysitter, a waitress, and a laborer. *See also Powell v. Powell*, 773 F.2d 1572 (11th Cir. 1572) (holding that just because a mentally disabled person was *once* able to work does not mean that disability is foreclosed when a mental or physical impairment later prevents working). Thus, a mildly mentally retarded person can "achieve social and vocational skills adequate for minimum self-support," but later become disabled under Listing 12.05C when she develops a physical impairment that "has more than 'minimal effect' on the [her] ability to perform basic work activities." *Lowery v.*

---

[1] The *Dictionary of Occupational Titles*, published by the United States Department of Labor, lists job code 381.687-014 "Cleaner, Commercial or Institutional" as requiring level 1 development for reasoning, mathematics, and language. This is the lowest level, and requires the ability to carry out "simple one- or two-step instructions," add and subtract two digit numbers, do some basic multiplication and division, change a dollar, recognize the meaning of 2,500 two- or three-syllable words, and speak and print simple sentences.

Case No: 1:05cv64/MMP/MD

*Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (quoting *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

The Commissioner relies on *Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986) to look beyond the raw IQ score as an aid in determining whether it is valid, but that case is easily distinguishable. There the claimant had one IQ score of 69 (with others of 73 and 79), but had a two year associate's degree, held various clerking jobs, and taught middle-school algebra. That degree of education and accomplishment is a far cry from what this case presents. The Commissioner also cites *Whetstone v. Barnhart*, 263 F. Supp. 2d 1318 (M.D. Ala. 2003), as authority for denying disability when a claimant has worked, but there the claimant had finished the eighth grade *without* ever having been placed in special education. Also, while the claimant had scored a full scale IQ score of 58, her psychologist questioned the validity of the score, and, most critically, there was no evidence of onset prior to age 22.

Here the plaintiff's IQ score in a widely accepted assessment test was appropriately recorded by the school district when she was ten years old; she performed extremely poorly in elementary school until she was placed in special education classes, and she did not finish school beyond the fifth grade; she worked at jobs that did not require more than minimal intelligence; and she was not shown to have engaged in any activity beyond what would be expected of a person who is mildly mentally retarded. The reasons given by the ALJ for rejecting the IQ score were not supported by substantial record evidence, and the court therefore concludes that the ALJ erred.

In order to meet the second part of the listing, the work disability requirement, plaintiff need show only that there is a minimal effect on her ability to work. Minimal means less than severe. "A claimant is disabled under § 12.05(C) of the Appendix when the combination of the impairments renders the claimant severely impaired;

that is, disabled. Thus, the impairment referred to in § 12.05(C) is something less than "severe" as defined in § 404.1520(c)." *Edwards*, 755 F.2d at 1515. Whether plaintiff's physical limitations are at least minimal cannot seriously be contested. The ALJ found that plaintiff's knee problem was "severe," and that she could not perform her past relevant work (Tr. 20). He limited her to a light work job that allowed her to change between sitting and standing every hour (Tr. 19), something not available to a housekeeper. It is therefore clear that the record does not support a finding that plaintiff did not meet Listing 12.05C.

  2. <u>Physician opinion and pain.</u>

Plaintiff next contends that the ALJ erred in rejecting the opinion of Dr. Rozboril. Specifically, she says that Dr. Rozboril's opinion on the extent of her pain was conclusive evidence of her disability from working. She also argues that the ALJ erred in not accepting her complaints of pain. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984). In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . . Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053. The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician. *Broughton v. Heckler*, 776 F.2d

960, 962 (11th Cir. 1985). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). *Compare, Wilson v. Heckler, supra*.

Moreover, as this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler,* 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test. *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); *Kelley v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

*Case No: 1:05cv64/MMP/MD*

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223. The Eleventh Circuit recently stated:

> Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms

and complaints").[2]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by an opinion based on that belief.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

   Here Dr. Rozboril filled out a form in which he described how plaintiff related her pain to him, and then stated in effect that he believed her.  The ALJ was not required to accept either, but was required to review the evidence in its entirety.  The ALJ noted, for example, that Dr. Atchison's opinion on plaintiff's condition was not as restrictive as that of Dr. Rozboril, nor was that of Dr. Meister, who performed the original knee arthroscopy.  Moreover, there was inconsistency in Dr. Rozboril's opinions, when he described her pain at such a high level, but at the same time opined that she could work a full day if she could have a sit/stand option.   There was substantial record evidence to support the ALJ's determination on this issue, and plaintiff is not entitled to relief.

---

[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Case No: 1:05cv64/MMP/MD

3.  <u>Vocational expert testimony</u>.

Finally, plaintiff contends that the ALJ was required to accept the vocational expert's testimony that plaintiff could not work if she had to take hourly breaks. A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). However, the hypothetical question to which plaintiff refers was asked by the plaintiff's attorney, not by the ALJ, and it contained elements (hourly breaks) that the ALJ did not find as restrictions (Tr. 249). There was no error on this issue.

## CONCLUSION

This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made. The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*. Moreover, the failure to apply the correct legal standard is grounds for reversal, not remand. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983). Here the evidence seems to point to a finding of disabled. However, the IQ score in plaintiff's school records is 40 years old. The Commissioner's regulations relating to children provide:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to

stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

20 C.F.R. Pt. 404, subpt. P., App. 1, § 112.00 (10). Since the plaintiff's IQ score of 64 was recorded when she was eleven years old, it is no longer current, and therefore not presumptively valid. However, the regulations do not make such a score presumptively invalid. As was discussed above, plaintiff's school performance and her activities since leaving school are consistent with a diagnosis of mild mental retardation.

This case should therefore be remanded. The ALJ is required to fully develop the record, *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even though the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B July 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735). This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Company, supra*, 235 F.3d at 1304. The ALJ did not credit the validity of the plaintiff's IQ score because she felt there had been no formal testing, among other things. That was error, as noted above. In order for an informed decision to be made in this case, a current valid IQ score is

necessary.  *See, Reeder v. Apfel*, 214 F.3d 984 (8th Cir. 2000) (holding that remand for IQ testing is required where ALJ failed to obtain appropriate test results after a psychologist gave only an estimate of the claimant's IQ); *Gasaway v. Apfel*, 187 F.3d 840 (8th Cir. 1999) (holding that remand for IQ testing is appropriate where IQ scores, which otherwise met the requirements of Listing 12.05C, were 25 years old and could therefore not be presumed reliable).

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner be ordered to remand the matter for appropriate testing and for consideration of the plaintiff's claim consistent with this report and recommendation, and that the clerk be directed to close the file.

At Pensacola, Florida this 10th day of March, 2006.

/s/ *Miles Davis*
   **MILES DAVIS**
   **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**

Case No: 1:05cv64/MMP/MD